**15-56452**

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**E.F., a minor, by and through his parents, Eric Fulsang and Aneida Fulsang**

**Appellant-Plaintiff**

**v.**

## NEWPORT MESA UNIFIED SCHOOL DISTRICT

**Appellee- Defendant**

On appeal from the United States District court
Central District of California
Case No. 8:10-cv-00455-CJC

## BRIEF OF APPELLANT

Kathleen M. Loyer
Law Offices of Kathleen M. Loyer, Inc.
946 Calle Amanecer, Suite E
Telephone: 949-369-1082
Facsimile: 949-366-6836
kmloyer@education-law.com
atty@education-law.com

# TABLE OF CONTENTS

Table of Contents........................................................................... 2

Table of Authorities ...................................................................... 6

I.    Jurisdictional Statements ................................................. 10

Under 20 U.S.C. §1415(i)(2), any party aggrieved by a
Decision from a due process request under the Individual with
Disabilities Education Act (IDEA) may appeal the findings to a
federal district court

Under 28 U.S.C. §1291, this Court has jurisdiction over appeal
from all final decisions of the courts of the United States.  This
Court also has original jurisdiction under 28 U.S.C. §§1331
and 1343 over actions arising from federal questions, the
Constitution or laws of the United States, including the ADA
and §504 of the Rehabilitation Act

Under 28 U.S.C. section 1367, this court has discretion to assert
supplemental jurisdiction over state law claims when the state and
federal claims derive from a common nucleus of operative fact, the
claims are such that the plaintiff would ordinarily be expected to try
them all in one judicial proceeding, and the federal issues are
substantial.

II.    Statement of the Issues/Case ......................................... 11

III.    Statement of Relevant Facts ......................................... 13

    1.  According to educational records contained in the administrative
record, E.F. demonstrated communicative intent and foundational
communication skills since preschool......................................... ….13

    2.  NMUSD's progress was deminimus during the relevant time
period.................................................................................14

    3.  NMUSD's interventions since 2009 failed to result in a function,
effective communication modality for E.F .......................................14

4.  NMUSD made the flawed determination that E.F.'s cognition prevented him from acquiring functional communication and from making more than deminimus educational progress.........................15

5.  In violation of his IEP, E.F.'s DIS therapy services were delivered within the classroom, whether they were designated as "individual" or "small group" despite numerous observations by staff and parents that he did not do well in group settings ...................................................16

6.  E.F.'s IEPs were devoid of goals related to any high tech Augmentative Communication devices, despite his minimal progress in achieving functional communication through January 2013 .........17

7.  NMUSD claims and the ALJ and District court's affirmations as to the expertise of staff, as it applies to E.F., is misleading given the NMUSD's documented failure over several years to adapt his support services, interventions and augmentative communication modalities successfully ..........................................................................................17

8.  When E.F. was provided the intense services recommended b the IABA assessment team, he demonstrated meaningful progress. .......18

IV.  Summary of Argument ................................................................. 19

V.  Standard of Review ...................................................................... 19

In the present case, Student contends both clear error and abuse of discretion has occurred.

1.  Partial Appeal of Administrative Decision ("AD") .................... 19

The IDEA provides that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(i)(2)(C)

2. Motion for Summary Judgment ..................................................... 20

Summary Judgment is reviewed de novo. Viewing the evidence in the light most favorable to the appellant, whether there are any genuine issues of material fact in dispute and whether the district court correctly applied the substantive Law

VI.    Argument ....................................................................................... 21

A. Partial Appeal of Administrative Decision ....................................... 21

The Court:
1. abused its discretion by finding that the ALJ's Decision should be afforded substantial weight when ALJ failed to demonstrate understanding of the complexity of Student's disability and the impact of the NMUSD's failure to provide appropriate intervention in the area of functional communication for the entire SOL ................ 22

2. abused its discretion in affirming to the ALJ's holding as to the credibility of Dr. Hughes, an experienced, world known behaviorist ..................................................................................... 26

3. abused its discretion in affirming the ALJ's finding that Student lacked prerequisites for assessment in the area of high tech augmentative communication device ........................................... 29

4. abused its affirming the ALJ's finding that all IEPs were appropriate and provided FAPE, despite her finding of a denial of FAPE in the areas of AT/AAC, where the NMUSD failed to assess for and provide a high tech communication device. ............................................... 32

5. erred in affirming the finding Student failed to meet his burden of proof as to the NMUSD's failures in the provision of FAPE over the entire statute of limitations when Student presented documentary evidence and testimony to the contrary and when there was a conflicting finding by the ALJ of such denial of FAPE .............. .32

B.   Motion for Summary Judgment ....................................................... 33

1. The district court erred and abused its discretion when, on June 23, 2015, it ordered Defendant to file a MSJ prior to the Discovery cutoff date of October 23, 2015, while failing to acknowledge the bifurcation of the claims and the numerous changes in the scheduling orders and the impact such had on the timeline of the case........ 33

2. The district court erred and abused its discretion when it failed to allow the minor to file a First Amended Complaint so as to cure the cited deficiencies it found in his ADA and §504 claims when no previous amendments had been filed......................................... 34

3. The district court abused its discretion when it found that there were no genuine issues of material fact in dispute and failed to view facts presented more favorably to the non-moving party.................... 36

4. The district court erred when it failed to acknowledge information in the record that supported the NMUSD exhibited deliberate indifference in analyzing the minor's communication deficits and the impact it was having on his ability to access and benefit from his education. ................................................................................... 37

5. The district court erred in its defense of and efforts to explain and validate Ms. Fenton's comments as to the "grand scheme" of E.F.'s life, where learning the alphabet was not that important as it demonstrates an abuse of discretion and error of equal magnitude as the speaker's plain language defined the NMUSD's policies towards E.F. and intentional behavior as to their purposeful decisions to refuse to provide him access to an educational experience equal to his non-disabled peers....................................................................... 37

VII.   Conclusion ..................................................................... 38

VIII.  Certification of Compliance ........................................... 39

IX.    Statement of Related Cases ........................................... 39

TABLE OF AUTHORITIES

Cases                                                                                 Page(s)

*Blake C. ex rel. Tina F. v. Dep't of Educ., State of Hawaii,*
    593 F. Supp. 2d 1199, 1212 (D. Haw. 2009).........................................23,24,29

*Board of Education of Hendrick Hudson Central School Dist. Westchester County v. Rowley*
    458 U.S. 176 (S.C. 1983)........................................................................ 23

*Capistrano Unified Sch. Dist. v. Wartenberg*,
    59 F.3d 884, 891 (9th Cir.1995) ........................................................... 20

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 321 (1986)....................................................................... 33

*Compton Unified Sch. Dist. v. Addison*,
    598 F.3d 1181,  (9th Cir. 2010) ............................................................. 36

*Deal v. Hamilton County Bd. Of Educ.,*
    392 F.3d 840, 862, 863, 864 (6th Cir.2004) .........................................24,25

*Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California,*
    24 F.3d 1545, 1552, 1557 (9th Cir.1994) .............................................. 11

*Florence County School District Four v. Carter ex rel. Carter,*
    510 U.S. 7 (1993)...............................................................................20,21

*Forest Grove Sch. Dist. v. T.A.,*
    523 F.3d 1078, 1085 (9th Cir. 2008) ...................................................20,21

*Gregory K. v. Longview Sch. Dist.,*
    811 F.2d 1307, 1311 (9th Cir.1987). ..................................................... 20

*K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.,*
    545 F. Supp. 2d 995, 999, 1004 (N.D. Cal. 2008).................................20,26,27

*Kaye v. Bd. of Trustees of San Diego Cty. Pub. Law Library*,
    612 F. Supp. 2d 1146, 1148 (S.D. Cal. 2007)..........................................11

*Lovell v. Chandler,*
    303 F.3d 1039, 1056 (9th Cir. 2002) ......................................................35
*Mark H. v. Lemahieu5*
    513 F.3d 922, 938 (9th Cir. 2008) ..........................................................35

*N.B. v. Hellgate Elementary School Dist., ex rel. Bd. of Directors,*
    541 F.3d 1202, 1210, 1212-1213 (9th Cir. 2008) ...................................23,25

*Ojai USD v. Jackson*,
    4 F.3d 1467, 1472, 1476 (9th Cir. 1993) ...............................................20,27,35

*Parents of Student W. v. Puyallup Sch. Dist.,*
    31 F.3d 1489, 1496 (9th Cir.1994) ........................................................21

*Park ex rel. Park v. Anaheim Union High Sch. Dist.,*
    464 F.3d 1025, 1033 (9th Cir.2006) (per curiam) .................................21

*Polk v. Cent. Susquehanna Intermediate Unit 16,*
    853 F.2d 171, 172, 180, 182, 184-185 (3d Cir.1988)............................24

*Ridgewood Bd. Of Educ.  v. N.E.,*
    172 F.3d 238, 247–48 (3d Cir.1999) .....................................................24

*Sch. Comm. Of Town of Burlington, Mass. V. Dep't of Educ. Of Mass.,*
    471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2nd 385 (1985).....................*34*

*TR v. Kingwood Tp. Bd. Of Education*,
    205 F.3d 572,577 .....................................................................................24

Statutes

20 U.S.C.
    §1400, et seq. ...........................................................................................10

    §1412(a)(12)(B)(i) ..................................................................................28

9§1414(d)(3)(B)(v) .................................................... 29

§1415 .................................................................... 20

§1415(i)(2) ......................................................... 10,12

§1415(i)(2)(C) ......................................................... 20

28 U.S.C.
§1291 .................................................................... 10

§1331 .................................................................... 11

§1343 .................................................................... 11

§1367 .................................................................... 11

§1367(c) ................................................................ 11

29 U.S.C.
§794(§504) ............................................................. 10

42 U.S.C.
§12132 et seq. ........................................................ 10

Other Authorities

California Civil Code (CCC)
§51 ...................................................................... 10

§54.1 .................................................................... 10

California Education Code (CEC)
§32260-62 ............................................................. 10

§44807-8 .............................................................. 10

§48400 .................................................................. 10

§56343 .................................................................. 10

FRCP 15 O'Connor Federal Rules Civil Trials 2016,
   (Updated for 2016 Jones McClure) ....................................................... 19

34 C.F.R. §300.105(a)................................................................................. 29

Lester Aron,
 *Too Much or Not Enough: How Have the Circuit Courts Defined a Free
 Appropriate Public Education After Rowley?,*
 39 Suffolk U. L. Rev. 1, 7 (2005) ............................................................. 24

Philip T.K. Daniel,
 *Some Benefit" or "Maximum Benefit": Does the No Child Left Behind Act
 Render Greater Education Entitlement to Students with Disabilities?,*
 L. & Educ. 347, 357–62 (July 2008) ......................................................... 24

Unruh Civil Rights Act ............................................................................... 10

## I.   Jurisdictional Statements

On March 24, 2014, E.F., an otherwise identified, non-verbal, elementary

school student, diagnosed with autism, filed a Complaint in the United States

District Court against Newport Mesa Unified School District ("NMUSD").

*(Docket 2 "Dkt 2"),*  The Complaint contained an appeal of an administrative

decision (AD)  by the California Office of Administrative Hearings (OAH) under

the Individuals with Disabilities Act, 20 U.S.C. §1400 et seq., (IDEA), causes of

actions for violations of the American with Disabilities Act (ADA), 42 U.S.C.

§12132 et seq.,  the Rehabilitation Act of 1973, 29 U.S.C.§794 (§504), the Unruh

Civil Rights Act (the Unruh), the California Civil Code, CCC §51 and 54.1 and

violations of CEC §§56343, 32260-62, 44807-8 and 48400.  Stipulations were

achieved whereby additional claims contained in the original Complaint were

dismissed. *Dkt 42 ER* 61 *Order Dismissing Claims4, 5, 6, 7 & 11.*

The district court upheld the AD in its entirety. *Dkt39 ER 89 Mem of Dec.,*

Then, in a subsequent order the following day, the Court ordered the NMUSD to

file a motion for summary judgment.  *, Dkt 40  ER 62 Order Dir. Def  to file MSJ.*

The MSJ was granted in its entirety.  *Dkt 54, ER 47 Order Granting MSJ*

Under 20 U.S.C. §1415(i)(2), any party aggrieved by a decision from a due

process request under the IDEA may appeal the findings to a federal district court.

Further, under 28 U.S.C. §1291, this Court has jurisdiction over appeal from all final decisions of the courts of the United States; has original jurisdiction under 28 U.S.C. §§1331 and 1343 over actions arising from federal questions, the Constitution or laws of the United States, including the ADA and §504. In addition, "[f]ederal courts have broad authorization under 28 U.S.C. §1367 to assert supplemental jurisdiction over state law claims when the state and federal claims derive from a "common nucleus of operative fact," the claims are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding," and the federal issues are substantial. *Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California,* 24 F.3d 1545, 1552 (9th Cir.1994). "It has consistently been recognized that [supplemental] jurisdiction is a one of discretion." *Id.* at 1556" as cited in *Kaye v. Bd. of Trustees of San Diego Cty. Pub. Law Library*, 612 F. Supp. 2d 1146, 1148 (S.D. Cal. 2007).

"Under section 1367(c), a court can decline to assert supplemental jurisdiction over a pendant claim if the district court has dismissed all claims over which it has original jurisdiction. *Executive Software* at 1557. If otherwise making its determination, the court should be guided by considerations of "judicial economy, convenience, fairness and comity." *Id*.

## II.    Statement of Issues/Case

A student's individualized education plan (IEP) must be tailored to the unique needs of the child and reasonably calculated to produce benefits (i.e., learning,

progress, growth) that are significantly more than deminimus to determine whether an education benefit provided to that child allows for meaningful advancement. 20 U.S.C. §1415(i)(2). To fail to do so is a denial of FAPE (Free and Appropriate Public Education). In the present case, Plaintiffs filed a partial appeal of the AD due to their contentions that the ALJ failed to understand the complexities of E.F.'s disabilities and failed to properly consider all the facts presented, thereby committing an abuse of discretion and error. The district court determined substantial deference should be applied to the AD and affirmed it in its entirety. *ER Dkt 39 ER 89* Plaintiffs are now appealing the district's court's decision on the partial appeal. Plaintiffs contend the AD should not have been granted substantial deference given the ALJ's errors, omissions and/or disregard of the facts.

Plaintiffs are also appealing the district court's granting of the Defendant's court ordered MSJ in its entirety. *Dkt 40 ER 62; Dkt 54 ER 47* The district court ordered the MSJ be filed four months prior to the discovery cutoff date and granted it in its entirety without leave to amend, resulting in a punitive prejudicing of the minor's rights. Further, Plaintiffs contest the courts findings that there were no material facts in dispute and that no reasonable fact finder could support a finding of deliberate indifference in the facts presented. Plaintiffs note they acknowledge the court's application of sovereign immunity as to the state law claims and their dismissal. However, they contend but for the dismissal of all federal claims,

pendant jurisdiction over the state law claims would be judicially and fiscally prudent given they arise out of the same facts.

### III. Statement of Relevant Facts

1. <u>NMUSD generated documents contained in the administrative record document E.F. demonstrated communicative intent and foundational communication skills since preschool. This is a material fact in dispute.</u>

When reviewing the evidence presented, the ALJ failed to acknowledge facts that discredited NMUSD witness contentions that E.F. had not demonstrated prerequisite skills to be assessed for use of a hi tech augmentative/alternative communication [AC] device. Evidence presented show, as far back as 2010 when he was 3.11 years old, E.F. demonstrated communicative intent and use of symbolic communication. *ER 349* E.F.'s 2/9/10 IEP notes his strengths as increased attention during large and small group activities, ability to scan and match objects to a picture, his "beginning to ask for help by taking the adults hand…" *ER 264-266* It also notes E.F. will look in the direction of the adult speakers 90% of the time. *Page 267* indicates he could use cause and effect toys as intended and he was physically communicating his need for help. *Page 268* indicates he used gestures and pictures to communicate with others, paired signs with pictures, moved his mouth to imitate adult during speech activities. *See also p269-271*, where his baseline skills note his use of pictures to communicate requests. He also demonstrated fine motor capabilities in grasping small items,

drawing circular scribbles and holding scissors. Notes on *page 274 ¶2* documents his Speech and Language Pathologist's (SLP) report commenting on his use of signs, gestures and attempts at vocalization to communicate.  Ms. Seldin, NMUSD S&L Pathologist (SLP) and AT/AC specialist testified E.F. demonstrated the prerequisite for use of high tech AC by his use of sign language and the PECs system. *ER 460-461*  (This will be more fully discussed below.)

2. <u>According to the educational records contained within the Administrative Record, E.F.'s progress was deminimus during the relative time period</u>.

   A review of E.F.'s progress reports contained in the IEP placed into the AR reveal the following:  At the February 9, 2010 IEP team meeting E.F. met 6 out of his 15 goals (40%).  Of the remaining 60% of his goals he averaged only a 38% rate of progress.  *ER p265,266, 267,268,271.  Summarized on ER 257*.  At his February 4, 2011 IEP team meeting, it was reported he met 7 of his 19 goals (37%).  Of the remaining 63% of his goals, he again only averaged a 38% rate of progress.  At his February 1, 2012 IEP team meeting, it was reported he met 11 of his 14 goals, 79%.  Of the remaining 21% of his goals he averaged a 55% rate of progress.   The 2012 IEP was revised after NMUSD found E.F. to be mentally retarded and found him eligible under the category of mentally retarded/ intellectually impaired. *ER 283, 284 (2nd Disability noted as MR/ID Mental)*

3. <u>NMUSD's interventions since 2009 failed to result in a functional, effective communication modality for E.F.</u>

The record is replete with references of the fact that none of the no tech, low tech communication modalities (AC) implemented by NMUSD resulted in functional communication across environments. Private assessor, Cottier, confirmed this. Cottier noted "[E.F.] is a boy who does not have a reliable means of communication." However, she also concluded he "demonstrated an intent to communicate and participate in interactions." *ER p295¶4, 293§¶6*. The NMUSD staff attributed E.F.s minimal progress to their determination of his low cognition. Ms. Cottier cautioned, "It should be remembered that the most basic underlying principle when selecting and developing an effective augmentative communication or assistive technology system is that the effort to utilize a system needs to be minimized and that the motivation and desire to use the system needs to be equal to, or greater than, this effort. Since augmentative communication systems [ACs] by nature require more steps and effort to communicate than speech, this concept was very important to remember considering [E.F.'s] limited tolerance for frustration." ER*294¶1*. This is a concept that NMUSD staff failed to apply despite their claims of expertise.

4. NMUSD's flawed determination that E.F.'s cognition prevented him from acquiring functional communication and from making more than deminimus educational progress is a material fact in dispute.

The determination was made despite NMUSD staff's admitted inability to fully administer standardized assessments as to his cognition or the known difficulty in

accurately assessing a non-verbal, autistic child's full cognitive ability. *ER 368-369:13-25,1-13  ("ER 368-369:13-25, 1-13")*

NMUSD's opinion as to E.F.'s cognition is a material fact in dispute.  In February 2009 School psychologist Eby Kent assessed E.F.  *ER 282,28..*  Her report indicated the difficulty in administering standardized cognitive measures on preschoolers.  Yet, she reported he achieved a standard score (SS) of 79 on the DAYC (Development Assessment of Young Children).   She tested him again in January 2011 using the Mullen Scales of Early Learning Composite (ELC) where he achieved a SS of 49.  And, using the DAYC she reported a SS 50.  When asked if these tests were normed for the autistic community, Kent indicated she didn't recall, she didn't think it was, she would have to look at the manual.  Yet she chose that assessment protocol repeatedly.   When asked how E.F.'s lack of functional communication would impact these assessments, she indicated only the portions related to language based skills would be impacted, not the visual receptive and fine motor.

5. E.F.'s IEPs were devoid of goals related to any high tech AC prior to the January 2013 IEP, despite his minimal progress in achieving functional communication over the entire previous period of time within the SOL.

 E.F.'s parents originally filed for due process on May 17, 2012. They arranged for Ms. Cottier to assess E.F. in July 2012 and shared the report with the District upon receipt. *ER p903-907.*  However, a high tech AC device was not added to

E.F.'s IEP until January 2013. *p948 §F.* All previous IEPs failed to include any mention/consideration of a <u>high tech</u> device or any goals addressing use of a high tech device. *IEPs ER at p291§F, 289 §F, 287 §F, 286 §F, 280 §F, 278 §F, 276 §F, 272 §F.* As such, Plaintiffs contend the IEPs failed to provide FAPE. Plaintiffs contend E.F. should have been assessed for/provided a high tech AC in 2010, given the failure of the NMUSD's interventions.

6. <u>All of E.F.'s therapy services were delivered within the classroom, whether they were designated as "individual" or "small group", despite numerous observations by staff and parents that he did not do well in a group setting.</u>

   Testimony of Kathy Burns, classroom teacher for 2011-12 and 2012-13 School years, indicated sensory activities were done in whole group setting, speech and language and occupational therapy were done on a "push in model" *ER 350, 352,356.* The IEP service plans for that time period, however, indicate direct services both individual and small group. *ER 264, 284, 286, 290, 297.* As such, the delivery of those were in violation of the IEP and constitute a denial of FAPE and supported E.F.'s contention that the program and services provided by the NMUSD were inappropriate.

7. <u>NMUSD claims and the ALJ and district court's affirmations as to the expertise of staff, as it applies to E.F., is misleading given the NMUSD's documented failure over several years to adapt his support services, interventions and augmentative communication modalities successfully.</u>

   As detailed above, there is no challenge to the fact that the NMUSD's IEP failed to result in E.F. achievement of a functional communication modality. However,

his progress since receiving the intensive interventions recommended by IABA and Ms. Cottier were documented in their sworn declarations. *Dkt 48-4 ER 197-206; 48-5, ER 207-222,*

8. E.F. was provided the intense services recommended by the IABA assessment team, headed by Dr. Elizabeth Hughes and with the consultation of Cynthia Cottier, SLP AT/AC Specialist he demonstrated meaningful progress.

In the opposition to NMUSD's MSJ, the Plaintiff's included sworn declarations by E.F.'s parents, Ms. Cottier, Dr. Hughes and her assessment team, Aviva Moss Private SLP, Marguerite L. McCrow, Private Behaviorist (Nyansa), Brooke L. Hoertz, Private Occupational Therapist, who all documented the progress E.F. has made since his parent's withdrew him from the NMUSD and funded and staffed his education program as recommended by the IABA team. *Dkt 48 ER 187; 48-2 p188-189,190-191; 48-3 p192-196;48-4; 48-5, 48-6 p1-3. 48-7 226-228; 48-8 p229-231; 48-9; 48-10; 48-11; 48-12; Dkt 70 ER 63, p68:1-10.*

## IV. Summary of Argument

Plaintiffs contend the district court erred when it gave substantial deference to the AD, given the failure of the ALJ to fully understand the complexity of E.F.'s disabilities and the inability to accurately establish his cognition, as wells as the many errors and omissions in her findings. As such, the AD was not careful, thorough or sensitive to the complexities of the case as required. Quantity does not equate to quality. *Dkt 39 ER 89*

They further contend that the district court abused its discretion when it ordered the Defendant to file a MSJ four months prior to the discovery cutoff date without acknowledging the good cause delays in the progression of the case, thereby denying Plaintiffs the ability to fully develop their case; and then granted the MSJ in its entirety without granting leave to amend the noted deficiencies, thereby inflicting a punitive result on the minor as to the prosecution of his case. *Dkt 39 ER 6; Dkt 40 ER 62; Dkt 54 ER 47.* The district court's finding that no reasonable factfinder could find that NMUSD employee's self-serving testimony and statements to parents could constitute deliberate indifference is also an abuse of discretion, when the same lack of sensitivity to the complexities of the issues and credibility of NMUSD staff carry over to the district court. Plaintiffs' inability to complete discovery seriously impacted their ability to present a well pled opposition to the MSJ and their ability to file a first amended complaint as is freely permitted under the revised Federal Rules of Federal Procedure, when justice so requires. *FRCP 15, O'Connor Federal Rules Civil Trials 2016* (Updated for 2016 Jones McClure).

## V.    Standard of Review

Student contends both clear error and abuse of discretion has occurred.

1.  Partial Appeal of Administrative Decision ("AD")

The IDEA provides that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *20 U.S.C. § 1415(i)(2)(C)* The IDEA does not empower courts to substitute their own notions of sound educational policy,… how much deference to give state educational agencies, however, is a matter for the discretion of the courts…" *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir.1987) As cited by *Ojai Unified School District v. Jackson,* 4 F.3d 1467, 1472 (9th Cir. 1993) (Internal cites omitted.)

When reviewing IDEA ADs, the court may "conduct a more searching review than is typical of agency decisions." *K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.,* 545 F. Supp. 2d 995,999 (N.D. Cal. 2008) Courts have consistently held substantial weight to an AD is given when the ALJ demonstrates a careful, impartial consideration of *all* the evidence and also "demonstrates his *sensitivity to the complexity of the issues* presented" (*Emphasis added.*) *Id.* @ 1000.

This court has held a review of the district court's factual findings is for clear error. *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir.1995) as cited in *Forest Grove Sch. Dist. v. T.A*., 523 F.3d 1078, 1084 (9th Cir. 2008). IDEA is clear in that the district court exercises its discretion in fashioning

appropriate relief. *Id.* Further, in *Florence County School District Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993), the Supreme held *20 U.S.C. §1415* also explained equitable considerations are relevant in fashioning relief. The courts enjoy broad discretion, but must consider all relevant factors. *Id. @ 16-15*

> "This court therefore has applied an abuse of discretion standard when reviewing a district court's grant or denial of equitable relief." *See Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1496 (9th Cir.1994) ("The district court exercised its discretion in denying this equitable remedy, and this court reviews for abuse of that discretion."); *see also Park ex rel. Park v. Anaheim Union High Sch. Dist.,* 464 F.3d 1025, 1033 (9th Cir.2006) (per curiam) ("We review the Hearing Officer's and the district court's award of compensatory education services for abuse of discretion." (citing Parents of Student W., 31 F.3d at 1496)).

This also Court noted,

> "Although we have not been entirely consistent in applying a standard of review to the district court's grant or denial of an equitable remedy, …to the extent that our cases are unclear, we reaffirm that the text of the statute and Supreme Court precedent dictate that we review for abuse of discretion the district court's determination of appropriate equitable relief." *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1085 (9th Cir. 2008).

2. Motion for Summary Judgment

Summary Judgment is reviewed de novo. Viewing the evidence in the light most favorable to the appellant, whether there are any genuine issues of material fact in dispute and whether the district court correctly applied the substantive law.

VI.   Legal Argument

The district court erred in its total affirmation of the Administrative Decision.

1. <u>The AD should not be afforded substantial weight when ALJ failed to demonstrate understanding of and sensitivity to the complexity of Student's disability and the impact of NMUSD's failure to provide appropriate intervention in the area of functional communication had on his ability to meaningfully access his education as well as the impact on cognitive assessments and there failed to demonstrate careful and thorough determinations.</u>

The district court erred and/or abused its discretion by affirming the AD in total when it held the ALJ should be given substantial deference despite her demonstrated failure to consider all the facts presented carefully and thoroughly with the needed sensitivity to the complexity of the issues presented. The ALJ and the court demonstrated a lack of understanding that NMUSD's cognitive testing on the minor, E.F. was flawed, dooming him to be a student of little potential, banished to a classroom where educators felt justified in minimizing his services. The AD and the court's findings indicated a dismissive handling of the testimony of Plaintiffs' key witness in its entirety; the ALJ's limited view and understanding of the importance of a student's acquisition of functional communication in the educational setting; and, the impact of the lack of functional communication on the assessment of a student's cognitive abilities and ability to participate in and benefit from their education. *Dkt 39 ER 89, Dkt 54 ER 4, p53:17-19,* It was not a harmless error.

Central to the IDEA is the requirement that disabled students receive an appropriate education, not merely an appropriate IEP. This Court has held that a school district that knows or should know that a child has an inappropriate IEP or

is not receiving more than a deminimus educational benefit *must* correct the situation. (Emphasis added.) *N.B. v. Hellgate ESD*, 541 F.3d 1202, 904, 1212-13 (9th Cir. 2008)*,* "In this regard the Ninth Circuit's opinion in *Hellgate* acknowledged that other opinions have recognized a "meaningful education benefit" type of standard against which to measure an IEP's adequacy. *Id.@* 1213 (discussing "some educational benefit" and "meaningful benefit standards). The court "recognized that, after the 1997 amendments to the IDEA, an IEP must provide a student with "*meaningful benefit*", not merely "*some educational benefit.*" After post-*Rowley* amendments to the IDEA, "a school must provide a student with a 'meaningful benefit' in order to satisfy the substantive requirements of the IDEA." (Citations omitted.) It characterized the "meaningful benefit" standard as "heightened," *Id.,* and 1997 IDEA statutory amendments as a "significant shift in the focus from the disability education system prior to 1997." *Id.* at n. 3. "The primary purpose of the EHA [the Education for all Handicapped Children Act of 1975—the predecessor to the IDEA] was to provide 'access' to education for disabled students." *Id.* (citing *Rowley*). The focus now, is on both access and "*meaningful benefit.*" *Blake C. ex rel. Tina F. v. Dep't of Educ., State of Hawaii,* 593 F. Supp. 2d 1199 (D. Haw. 2009),[1]

---

[1]In *Blake*, the court reversed a decision where an autistic child was denied reimbursement for private services, finding a violation of the IDEA when there was a failure to perform an assistive technology evaluation for an autistic student and

Unfortunately, this shift is causing a perversion in the special educational system that allowed NMUSDs to develop policies and practices that classify non-verbal students as having *low potential*, despite lacking adequate means to confidently assess cognition in this population, resulting in a students' *deminimus* progress being touted as acceptable by the educators with the imprimatur of the ALJs and courts. *Blake* explained how this phenomenon developed:

"Various opinions have left it ambiguous as to what the precise difference, if any, is between "meaningful" benefit and "some" benefit.[7] Indeed, the circuits are split. *See, e.g.,* Lester Aron, *Too Much or Not Enough: How Have the Circuit Courts Defined a Free Appropriate Public Education After Rowley?,* 39 Suffolk U. L. Rev. 1, 7 (2005) ("The circuit courts are severely divided on the critical issue of the standard for a FAPE for disabled students."); Philip T.K. Daniel, *Some Benefit" or "Maximum Benefit": Does the No Child Left Behind Act Render Greater Education Entitlement to Students with Disabilities?,* 37 J. L. & Educ. 347, 357–62 (July 2008). The court interprets the latest guidance from the Ninth Circuit in *Hellgate* as meaning that an IEP must be individualized and tailored to the "unique needs" of the child and reasonably calculated to produce benefits (i.e., learning, progress, growth) that are significantly "more than deminimus," and "gauged in relation to the potential of the child at issue." *Deal v. Hamilton County Bd. Of Educ.,* 392 F.3d 840, 864 (6th Cir.2004) (citations omitted) (cited with approval by the Ninth Circuit in *Hellgate* ).

"Only by considering an individual child's capabilities and potentialities may a court determine whether an education benefit provided to that child allows for meaningful advancement." *Id.* That is, the programs must be sufficiently "individualized" to produce "meaningful" benefit. *See, e.g.*, *Polk v. Cent. Susquehanna Intermediate Unit 16,* 853 F.2d 171, 172 (3d Cir.1988). Programs must be individually tailored to produce "more than a trivial education benefit." *Deal,* 392 F.3d at 862 (citing *Polk,* 853 F.2d at 180 and *Ridgewood Bd. Of Educ. v. N.E.,* 172 F.3d 238, 247–48 (3d Cir.1999)). "[A] satisfactory

_____

finding the IEPs were not reasonably calculated to enable the child to receive educational benefit.[1]

IEP must provide 'significant learning [.]' " *Kingwood,* 205 F.3d at 572, 577 (citing *Polk,* 853 F.2d at 182). What is "appropriate" cannot be reduced to a single standard but, rather, "must be gauged in relation to the child's potential." *Ridgewood,* 172 F.3d at 247 (citing *Polk,* 853 F.2d at 184–85)…For example, "[w]hen students display considerable intellectual potential, IDEA requires 'a great deal more than a negligible [benefit].' " *Id.* (citing *Polk,* 853 F.2d at 182). Courts "must analyze the type and amount of learning of which a student is capable in order to determine how much of an educational benefit must be provided." *Deal,* 392 F.3d at 863 (citation and internal quotation marks omitted)   *Id.* @1206"

In the present case, following the line of cases discussed in *Hellgate*, the

ALJ capsulizes this concept of predetermining a child's potential when she held:

 "The crux of this case is whether Student's acknowledged slow progress is due to his disabilities that do not permit him to progress at a more rapid rate, or due to the failures by the District [NMUSD] to adequately assess him in all areas of suspected disability and that those assessments that were finally done were either improperly developed or failed to address all of students deficits." ER 119 ¶6

The ALJ decided E.F.'s capabilities were low, resulting in her finding that the

educational benefit E.F. achieved could be equally low, as did the district court,

despite the fact there had been no credible way to accurately assess E.F.'s

cognition and his chief witness challenging the credibility of the cognitive testing

was deemed "unpersuasive" despite her significant qualifications and experience

with this population, her testimony addressing the issue was ignored.   *ER 368-*

*369:13-25,1-13, 372, 377:1-25, 378:1-8,430-431.*   Ms. Cottier also commented,

"Since it was reported by E.F.'s private speech and language pathologist that he

exhibited limited jaw mobility as well as indicators of apraxia, providing E.F. with

a restricted form of [AC] not only limited his expressive communication abilities and potential but also constrained his cognitive development, secondary to his lack of ability to demonstrate knowledge, answer questions or to participate in any type of discussion during academically based tasks." *Dkt 48-4, ¶11 ER 197-206*

Further, the AD ignores significant portions of the record and testimony that supported Plaintiff's contentions. Both Ms. Cottier and NMUSD SLP, AT/ACC specialist, Seldin, testified that E.F. could have been tested as early as 3 years old for a high tech device. *ER 451-452 ER 464* Dr. Hughes provided extensive testimony as to the complexity of E.F.'s disability, the impact on his ability to access instruction and the difficulty in assessing his cognition. The AD indicates Plaintiffs failed to present any evidence disputing the District's contentions or forwarding their case, when they provided significant evidence that could be found within E.F.'s education records and testimony of highly trained and experienced clinicians supporting their contentions, as discussed below.

2. The district court erred in its affirmation of the finding that the testimony of Dr. Elizabeth Hughes, Ph.D, an experienced, world known behaviorist, was unpersuasive, while using the testimony of NMUSD employee, Ms. Hinton, to discredit Mr. Hughes and the IABA team.

In *K.S. ex rel P.S. v. Fremont Unified School District,* 545 F. Supp 2d 995, the District Court N.D. California notes "A district court should accept the ALJ's credibility determinations "unless the non-testimonial extrinsic evidence in the record would justify a contrary conclusion." *Id.* @1003 (Internal cites omitted.)

In the present case, the evidence contained within the record, as discussed herein, should justify a contrary conclusion as to the credibility of Dr. Hughes and the IABA assessment team. The IEPs and other educational records included in the Administrative Record demonstrate E.F.'s lack of progress, his inconsistencies in retaining information, his communicative intent, and his demonstration of cognition beyond expectations. These items should be considered when reviewing the district court's full affirmation AD. This Court's ruling in *Ojai Unified School District v. Jackson* 4 F.3d 1467, 1476, mentioned in *K.S. at* 1004 is also worth considering. *K.S.* involved an action whereby An 8 year old student diagnosed with autism brought and action for review of an administrative decision as to whether the student was provided FAPE. The ALJ had determined, based on district employee testimony, that the student was severely mentally retarded and incapable of making better progress at school. The court echoed the proposition in *Ojai* that giving deference only to school personnel, based on their personal experience with a student and their perspective of the record "would eliminate the need for due process hearing[s]." In *K.S.* the court found the ALJ's erred in the determination that witnesses expressing opinion that were contrary to the school district's position were less credible given the basis of the dispute between the parties was the District's position toward in the matter, a situation not unlike the

present case.  The court went on to hold "common sense dictates that witnesses on both sides should be held to the same standards." *Id.@*1004-5.

Dr. Hughes is a highly trained, experienced clinician, who is well known throughout the world for her expertise as a behaviorist.  She trains professionals from around the world on conducting Functional Behavior Analysis. *ER 346-347, ER 358-365, 367-370, 374;10:10-20.*  E.F.'s parents engaged Dr. Hughes to assist them and the educators in developing an appropriate service plan for E.F.  AR p591.  She provided detailed testimony about the IABA report (AR 1042-1087) and responded without hesitation to all questions.   The AD indicates, however,

> "There are many flaws in the IABA report.  It is almost impossible to determine from the report whether the observations relate to the home or to the school environment." ER156 ¶180

Dr. Hughes testified extensively as to the contents of the report and the methodology IABA's assessment. *ER 381-394, 397-427, 432-446.*  The ALJ's failure to properly consider and reference the report and testimony is demonstrative to her lack of sensitivity to the complexity of E.F.'s disability.  Instead she found Ms. Hinton, a NMUSD Autism Specialist, who had reviewed E.F.'s file only a month prior to her testimony, a more credible witness whose testimony was quoted extensively. *ER468*

The AD also misstates the facts as to E.F. "meeting the majority of his goals and progressing substantially on the few he did not meet" when the evidence presented is quite the contrary, as discussed supra.

3. <u>The district court erred in its affirmation of the finding that E.F. lacked prerequisites for assessment in the area of high tech augmentative communication device is not supported by the evidence and testimony presented</u>.

The IDEA requires a local education agency (LEA) to assess a special education student in all areas of suspected disability, including assessments to determine assistive technology needs, as affirmed in *Blake C. ex rel. Tina F. v. Dep't of Educ.*, State of Hawaii, 593 F. Supp. 2d 1199 (D. Haw. 2009) where the court held in favor of Student when his rights were violated by a failure to perform an assistive technology evaluation. "See 20 U.S.C. § 1414(d)(3)(B)(v) (requiring as part of the development of an IEP that an IEP team "consider whether the child needs assistive technology devices and services") and § 1412(a)(12)(B)(i); 34 C.F.R. § 300.105(a) ("Each public agency shall ensure that assistive technology devices or assistive technology services, or both, as those terms are defined ... are made available to a child with a disability[.]").*Blake @* 1212.

According to NMUSD documents contained in the administrative record, E.F. demonstrated communicative intent and foundational communication skills since preschool. When reviewing the evidence presented, the ALJ and the district court

failed to acknowledge facts supporting E.F.'s contentions that he did, in fact, possess the foundations skills deemed required and should have had been assessed for AT needs since preschool (as detailed supra) *ER p349, 264, 265, 267, 268, 269-270,, 271, 274 ¶2, 460-61*

When asked if she believed a student had to have foundational skills in order to use a high tech AC device and, if so, what are those foundations skills, NMUSD employee, Lila Seldin, SLP AT/AAC Specialist replied "Yes." She described those skills as:

> "*Symbolic representation in the form of – symbolic communication could be words, sentences, and at a different level, augmentative alternative communication; sign language is a big alternative communication, AAC, picture communication is a big AAC attempt or system and a picture exchange system is a structured system, that approach*." As she testified she went on to say "*[E.F.] knew "all done" he signed it. That was symbolic. He had that. I modeled "all done," he understood that, and he was able to attempt that. So that gave him the basis, that sign language gave him the basis of knowing that and utilizing it*." *ER 460-61*

Ms. Seldin's testimony discredited NMUSD witness contentions that E.F. had not demonstrated prerequisite skills needed to allow assessment for use of a high tech augmentative communication "AC" device. As detailed above, the administrative records document the fact that, as far back as 2010 when E.F. was 3.11 years old. *ER349 ER 264, 265, 267, 268, 269-270, 271*, 274. ¶ Ms. Cottier testified she recommends a child be introduced to AT as early as age three so that

the child is able to communicate and language skills continue to develop. ER 451-453:13-25, 1-25, 1-5   Seldin concurred. *ER 463-64*.

The ALJ' findings demonstrated her lack of understanding of the issues presented and the testimony received.  She found E.F. lacked prerequisites while noting examples of his communicative intent, understanding of symbols and overall efforts to communication:

> *ER 121 ¶2 "Student communicated primarily through a picture exchange system…¶4 "He is generally compliant and often responds not only to his name, but also to specific directives", ER 127¶30 "If student really wanted something at school, he would take an adult by the hand and lead them to what he wanted….also used a picture exchange system to communicate… Student's communication was therefore a mix of modalities." ER 129 ¶44 "He was compliant and responded to directives." ¶45 Student had his own token board and appeared to understand its purpose and use."*
> .

In addressing her factual findings as to the May 2010 IEP team meeting, she failed to understand the testimony given by NMUSD SLP Bottorf  was false and misleading, when she notes  Bottorf's statements of E.F.'s need to develop communicative intent and the team's alleged decision to forgo consideration of more high tech   *ER 123 ¶12*. The ALJ failed to acknowledge the notes from the meeting were absent any discussion of AC other than the Picture Exchange Card system (PECs).  Nor were high tech devices discussed or considered.  Nor is there any mention of E.F.'s need to develop communicative intent.  No valid reason was addressed or explained for the failure of the IEP team to assess for and/or provide higher tech AC in either the IEP team meeting notes, or Ms. Bottorf's testimony.

To the contrary, Ms. Seldin's testimony established the fact that E.F. did

demonstrate the most important foundational skill, symbolic communication.  ER

460-61

4.  <u>The district court erred in its affirmation of the ALJ's finding that all IEPs were
    appropriate and provided FAPE, despite her finding of a denial of FAPE in the
    areas of AT/AAC, where the NMUSD failed to assess for and provide a high
    tech communication device.</u>

    As noted supra, a high tech AC device was not added to his IEP until

January 2013.  *ER 298 §F*   All previous IEPs failed to include any

mention/consideration of a high tech device or any goals addressing use of a high

tech device.  The IEPs also document that, when applying Ms. Seldin's definition,

E.F. did possess and demonstrate foundational skills sufficient to merit assessment

and provision of a high tech AC device as far back as May 2010.   As such,

Plaintiffs contend the IEPs failed to provide FAPE, a failure that caused him a

denial of educational opportunity that extended beyond the one year denial of

FAPE specified in the AD. This determination should be extended to May 2010.

5.  <u>The district court erred in its affirming of the finding Student failed to meet his
    burden of proof as to the NMUSD's failures in the provision of FAPE over the
    entire statute of limitations when Student presented documentary evidence and
    testimony to the contrary and when there was a conflicting finding by the ALJ
    of such denial of FAPE.</u>

     As fully discussed supra, when the evidence presented is carefully and

thoroughly reviewed in the context of the complexity of E.F.'s disability, a

determination that E.F. met his burden is justified.  The ALJ found that the District

did deny FAPE when it failed to assess E.F. in the area of high tech AC.  As part of that failure, the District also failed to develop an appropriate IEP, as all previous IEPs failed to provide for and address E.F.'s use of a high tech device for the development of an IEP.  The ALJ's finding lacks logic.  The IEP documents speak for themselves, they are absent these services, accommodations and related goals. The testimony presented established the needs for and the NMUSD's failure, the further violations flowed from that failure.

Motion for Summary Judgment

1. <u>The district court erred and abused its discretion by ordering Defendant's file a MSJ four months prior to the cutoff date for discovery after approving extension of the cutoff and without leave to amend.</u> *Dkt 40  ER 63; Dkt 54 ER 47*

    The Court ordered NMUSD to file an MSJ one day after its ruling on the partial appeal of the AD (June 23, 2015), prior to the completion of discovery, after it had granted bifurcation of the AD appeal, continued hearing dates due to the courts calendar,  and continued the discovery cutoff to October 23, 2015.  *Dkt 15 ER 180; Dkt 17 ER 182-83; Dkt 21 ER 178; Dkt 32 ER 116; Dkt 34 ER 115; Dkt 36 ER 113.*  Plaintiffs further contend the granting of the MSJ without leave to amend prejudiced them as they were forced to defend against the MSJ prior to full discovery and full development of their case in chief which had a punitive, prejudicial, chilling effect on the exercise of the minor's rights.

Plaintiffs requested the district court continue the MSJ until Discovery was completed, so as to avoid prejudice, citing *Celotex Corp v. Catrett*, 477 U.S. 317, 321 (1986), where the Supreme Court held the "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery. *Dkt 51 ER 184-186*. Plaintiffs' attorney provided a sworn declaration indicating they, working cooperatively with opposing counsel, had pursued discovery and agreed to extend Defendant's response to discovery demands which resulted in Plaintiffs receiving a massive document dump just days prior to the service of the MSJ. Counsel had had several meet and confers over the months since the original filing, the bifurcation, briefing and hearing of the partial appeal where the parties were attempting to be mutually frugal prior to the decision on the appeal. *Dkt 51 ER 184-186; Dkt 72 ER p29:21-25, 30:1-14; p34:10-15, 41:14-17, 43:17-25, 44, 45*

2. <u>The district court erred in its granting of Defendant's Court ordered motion for summary judgment when there are genuine issues of material fact in dispute as to the NMUSD's noncompliance with FAPE requirements and when it failed to review facts present in favor of the non-moving parties.</u>

Summary Judgment is reviewed de novo. Viewing the evidence in the light most favorable to the appellant, whether there are any genuine issues of material fact in dispute and whether the district court correctly applied the substantive law. Here, Plaintiffs contend that there are material issues of fact in dispute as to the extent of NMUSD's denial of FAPE, the existence of deliberate indifference. Plaintiff maintain the District discriminated against him due to his identified

disability. This discrimination was founded in NMUSD view of his cognition and his lacking of potential to learn, as exemplified by his classroom teacher at the last IEP team meeting.

The district court found the NMUSD was "ultimately wrong" as to its provision of appropriate services to E.F. But dismissed it as if it were harmless error. Deliberate difference does not require malicious intent. "Deliberate indifference is "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood"); Lovell, 303 F.3d at 1056. Thus, a public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). The Supreme Court has held the purpose of requiring proof of intent as a prerequisite for the recovery of damages from a public entity is to ensure it had knowledge and notice, not to measure the degree of institutional ill will toward a protected group, or to weigh competing institutional motives. Here, the District had notice and multiple opportunity to remedy the situation. Further, "Congress indubitably desired 'effective results and 'demonstrable improvement' for the [IDEA's] beneficiaries [h]ence actual educational results are relevant to determining the efficacy of educator's policy decisions." *Ojai USD v. Jackson*, 4 F.3d 1467, 1476 (9th 1993) (quoting Town of Burlington, 736 F.2d @788). It would seem

Congress and the Supreme Court left little room for educators to be so terribly wrong.

3. The district court erred in its finding that deliberate indifference cannot be established based on the facts presented within the administrative record. Plaintiffs contend this is a material fact that is in dispute and should be afforded full review.

The determination that Dr. Murphy's testimony fails to supports a finding that the District acted with deliberate indifference.

Dr. Murphy, a district employee and one of E.F.'s primary service providers was self-serving at best. She was presented as a highly qualified expert. As such she knew or should have known the harm that would be caused by failing to adequately serve E.F., yet she refused to even assess E.F. to ascertain whether high tech AC would be helpful in establishing functional communication. Her deliberate indifference to the risk and harm she surely could discern should not be "cast as something other than refusal", which is actionable. Ignoring (refusal) is a violation, as this Court found in *Compton Unified Sch. Dist. v. Addison,* 598 F.3d 1181, (9th Cir. 2010)

In Compton, this Court cautioned against interpreting "refusal" to include the negligent failure of a school district to take an action (such as evaluation) in a timely manner. As it could lead to "an absurd result" whereby the IDEA would require an agency to provide prior written notice that it *will* be negligent. However, if the action were described as something other than negligence, i.e., if

the District acted purposefully in its failure to evaluate, it would fit into IDEA's statutory scheme. In the present case, Plaintiff's claim the NMUSD's refusal to assess E.F. in the area of high tech AC was an act of deliberate indifference that was fueled by its determination as to his cognition, another deliberate act. As discussed supra, the application of the concept of matching recommended services to a child's potential when there are no checks and balances to that process is a dangerous one for children such as E.F. and his unsuspecting parents. E.F. lost many years of his development window to a group of educators who were "ultimately wrong", as held by the district court. *Dkt 54 ER 47 p53 line 17-18*. If they were truly the experts they were purported to be, they would have, quite simply, at the very least, assessed him for use of a high tech device when their efforts over four years failed to result in meaningful progress, rather than keep doing the same thing over and over and expecting a different result.

Plaintiffs contend reasonable fact finders would be able to conclude that deliberate indifference occurred, a material fact that E.F. should be provided an opportunity to present to those fact finders.

4. <u>The district court erred in its dismissal of the state law causes of action based solely on application of sovereign immunity</u>.

Plaintiffs understand and acknowledge the district court's ruling as to sovereign immunity. However, given the court's ability to extend pendant jurisdiction over state law matters when they arise from the same nexus of events,

these claims should be permitted should this matter be remanded and/or Plaintiffs are permitted to file a first amended complaint.

## VII. Conclusion

The AD was not careful, thorough nor sensitive to the complexity of E.F.'s disabilities and the issues in dispute related to the NMUSD's failure to provide him an education that resulted in meaningful benefit. As such, Plaintiffs respectfully request that the district court's affirmation of the those the findings in the AD that were subject to the appeal be reversed; that this court find the failure to assess for and provide a high tech AC device be extended through the entire statute of limitation due to the significance of this failure and the impact it hand on E.F.'s ability to access and benefit from his education; that Plaintiff be held to have substantially prevailed and that parents should be reimbursed for costs related to the IABA and Cottier assessments; that the District be ordered to fund the program and services as recommended by IABA and Cottier and that Plaintiff's be awarded attorney fees and costs for related to the appeal of the AD in the district court and the fees related to this appeal according to proof.

Plaintiffs further request a finding that there was an abuse of discretion in ordering and granting the MSJ prior to the cutoff of discovery, without leave to amended; that Plaintiffs were not afforded a review that was more favorable to them as the non-movants; that dismissal be reversed; Plaintiffs be permitted to

complete discovery and file an amended complaint; and, an award of fees and costs related to the MSJ and this appeal according to proof.

## VIII. Certification of Compliance

I certify that this brief complies with type-volume limitations set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font and contains 9208 words.

## IX. Statement of Related Cases

Plaintiffs, E.F., Aneida Fulsang and Eric Fulsang are not aware of any cases pending in this Court that would be deemed related to Ninth Circuit Rule 28-2-6.

Date:   April 4, 2016                Respectfully submitted by:

                                     By:_____/s/___Kathleen M. Loyer_____
                                         Kathleen M. Loyer
                                         Attorney for Plaintiff/Appellants
                                         E.F., Aneida Fulsang and Erick Fulsang

20160404 kml FD

9th Circuit Case Number(s)

15-56452

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) April 4, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    "s/"    Kathleen M. Loyer

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)

**Form 6.     Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains __9208__ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* Office 365, Word
*(state font size and name of type style)* 14 point font in Times New Roman , *or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)*
with *(state number of characters per inch and name of type style)*
_____ .

Signature | "s/"   Kathleen M. Loyer

Attorney for | Appellants, E.F., Aneida Fulsang and Eric Fulsang

Date | April 4, 2016